Eollett, J.
These promissory notes are claimed as gifts causa mortis.
The principles and laws that govern the rights of ownership and control of property are fundamental to man’s enjoyment and civilization. The rules and laws for the transfer or • transmission of such rights are carefully guarded, and should be strictly enforced.
Gifts causa mortis are not favored, and such gifts must be clearly proved. The civil law sought to prevent fraud in such gifts, and required their execution in the presence of five witnesses, to render them valid. Great strictness and clear proof to establish such gifts have been required by the English courts, and litigation as to them has been extensive and hostile.
Such a gift can be upheld only when the intention of the donor is definite and certain, and such intent is expressed as to a proper matter of such gift, and such gift is executed.
Whatever property Samuel Gano had at his death could be disposed of only by his will or by the law. Needles v. Needles, 7 Ohio St. 433; Crane v. Doty, 1 Ohio St. 283.
*470 This court held, in Phipps v. Hope, 16 Ohio St. 586, that “ directions by an owner in respect to a disposition of his property, to take effect after his death, and different from such as the law would prescribe in case of intestacy, are of no validity unless made through the medium of a last will and testament.”
Directions alone are not sufficient. A gift causa mortis has the nature of a legacy. It is a gift in prospect of death, and it may be revoked before death, and it is not complete during the donor’s life, but takes effect only upon his death. Such a gift is liable to the debts of the donor. Such is the holding of both English and American courts. '
In Lawson v. Lawson, 1 P. Wins. 441, a husband upon his death bed gave to his wife a purse of 100 guineas and bid her apply it to her own use, and the court held, “ This is a donatio causa mortis and a good legacy to the wife, and shall not go to the executors or administrators of the husband if there is sufficient to pay his debts.” But we need not cite other decisions, as the statute 8 and 9 Yictoria, c. 76, declares, that such a gift is a legacy within the meaning of the acts in England and Ireland, which impose duties on legacies.
“ A donatio causa mortis is of .the nature, of a legacy.” Jones v. Brown, 84 N. H. 439.
“ Gifts causa mortis are of a mixed nature, resembling gifts inter vioos, in the essential requisite of delivery, and resembling legacies in being subject to the debts of the deceased, and in being ambulatory or revocable, and contingent on death.” Bloomer v. Bloomer, 2 Brad. 340. Also see Rhodes v. Childs, 64 Pa. St. 18, Rop. Leg. 2 ; 3 Red. Wills, § 42, and cases cited.
Look at the “ facts ” in this casé as found by the court. Decedent left a widow, three girls who were children of a first wife, and a boy the son of his widow. These promissory notes constituted the larger part of his estate. Before his last sickness he had expressed a desire that his son Frank should have his farm, and that “ his children aforesaid” should have the notes. Do the words “his *471 children aforesaid” include only the “children of his first wife,” or do they include his son Frank? Give the words either meaning, and his expressed desire was not carried out, and is not asked to be carried out.
At his death bed, though boarding with his son Frank, there were present only two of his children, the married daughters of his first wife, and I. J. Fisk, the husband of one of these children; and on the morning of the day he died, in the presence of this husband, and Caroline Pearson, her sister, “he called Mrs. Fisk, and said to her, my notes are in a little box on the bureau there ; I want you to take them and divide them equally among you children.” There was but one person present who is not a beneficiary of this claimed gift, and he is the husband of the chief actor, who got the key and tried it in the box, and, “ for fear she might losé it,” gave the key to this husband. It does not appear that a word was'said to the other daughter, or that he told her to take any thing.
"We will not stop to consider whether this husband should testify in such a case, or what effect should be given to his statements.
The father died the same evening, on Friday, and was buried the next day, on Saturday.
“After her father’s death, Mrs. Fisk took the box containing the notes home with her.” What else was in the box we do not know. The notes were never divided. On the next Monday, I. J. Fisk was appointed administrator, and took these notes, and they were appraised as part of the estate, and have ever been so held.
The validity of each gift, causa mortis, depends upon the facts of each case.
“ The gift of the maker’s own note is the delivery of a promise only, and not of the thing promised; and upon the death of the maker, leaving the promise unfulfilled, the gift fails.” Starr v. Starr, 9 Ohio St. 74.
“ The drawer of a cheek delivered it to the payee, intending thereby to give to the payee the fund on which the cheek was drawn. Held, that until the check was *472 either paid or accepted, the gift was incomplete, and that, in the absence of such payment or acceptance, the death of the drawer operated, as against the payee, as a revocation of the check.” Simmons v. Savings Society, 31 Ohio St. 457.
In each above case there was something more to be done, either by the donor or by the donee, before the gift could be enforced.
“ To constitute a vailid gift the transfer must be consummated, and not remain incomplete, or rest in more intention ; and this is so whether the gift is by delivery only, or by the creation of a trust in a third person, or in the donor; enough must be done to pass the title.” Martin v. Funk, 75 N. Y. 134.
The words, found by the court to constitute the gift of the notes, were, “ I want you to take them and divide them eqnally among you children.” Suppose he thus intended the four children, what was Mrs. Eisk to do ? Was she to collect the money due on the notes, and then divide the proceeds equally among them ? If so, the gift was not complete, and no title passed. His death revoked the gift.
Or was Mrs. Eisk to divide the notes into four equal amounts in value, and then deliver to each child a definite parcel of these thirty-eight notes ? This was never done, and these notes, it seems, could not be so divided. So there never was a separation of the notes made so as to vest in each donee an ownership in particular notes.
But, had the notes been so that they could be equally divided, how could the doubtful or worthless notes be disposed of? Who would take them ? Or should she disregard them ? Gano did not hand the notes to Mrs. Eisk, and say, “ I give these notes to you four children;” neither did he say, “ I give these notes to you children equally, one-fourth part to each.” Something more must be done to complete the gift.
But the delivery must be as perfect and complete as the *473 nature of the thing given will admit of. Par. Con. *326, and cases cited; 3 Wait. Act. & Def. 505.
“ To establish a gift, causa mortis, the common law requires clear and unmistakable proof, not only of .an intention to give, but of an actual gift perfected by as complete á delivery as the nature of the property will admit of.” Hatch v. Atkinson, 56 Me. 324. See also 3 Red. Wills, 348 (20).
The facts found by the district court show there was no delivery of the alleged gifts; and the court erred in holding, upon such finding of facts, that there was such a delivery of the promissory notes as constitutes a good gift, causa mortis.
We need not examine how far the courts will protect a widow from an intended fraud upon her rights as such widow, neither to what extent a father may disinherit his children by gifts made during the last few hours or days of his life. Our laws relating to written and nuncupative wills, and our laws of descent, should not be defeated by such gifts, unless in a very clear case.
Cases of donations, causa mortis, are exceptions not to be extended by way of analogy. Headley v. Kirby, 18 Pa. St. 326; also cited in 1 Am. Law Reg. 25.
This attempt to make a will for the father, and to dispose of his property, “ different from such as the law would prescribe in case of intestacy,” is “ of no validity.”

Judgment reversed and cause remanded.